HERBERT M. ELLEND, trustee in bankruptcy of Harry Marks and Mark·M. Marks, individually, and trading as H. Marks & Son, complainant-respondent,

*v.*

HARRY MARKS, MARK M. MARKS, individually, and trading as H. Marks & Son, et al., defendants-appellants.

[Submitted May 29th, 1931. Decided February 1st, 1932.]

*Mr. Harry S. Neiwirth,* for the appellants.

*Mr. Palmer Bradner,* for the respondent.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the court of chancery which adjudges that certain shares of building and loan association stock, standing in the name of defendant Hannah Marks, are the property of the defendant partnership H. Marks & Son, of which the complainant is the trustee in bankruptcy.

Harry Marks and Mark M. Marks, trading as H. Marks & Son, were adjudicated bankrupts on February 25th, 1927, and were discharged February 8th, 1928. Subsequently the situation respecting the shares of building and loan stock was discovered and the bankruptcy proceeding was reopened by order of the United States district court. The trustee then filed the present bill to recover the shares for the bankrupt's estate.

In 1922 the Milburn Building and Loan Association issued a certificate for ten shares in the name of H. Marks & Son. This was assigned to Hannah Marks. Subsequently, in 1922, 1923 and 1924, other certificates were issued in the name of Hannah Marks, for a total of forty-five shares. It is the claim of the complainant that all of these fifty-five shares were the property of the partnership and were concealed in the name of Hannah Marks, who is the wife of Harry Marks, in fraud of creditors.

It conclusively appears from the record that from February 10th, 1922, to February 9th, 1927, just before the adjudication in bankruptcy, all the payments made on account of these fifty-five shares were made by the partnership, being charged against the bank account of the partnership by special arrangement with the association and the bank.

This is the principal item of proof relied upon by the respondent.

The defendants' testimony was that in 1922 the partnership was in need of money and Hannah Marks advanced $2,000 of her own funds. It was agreed that she was to be repaid by means of the ten shares of building and loan association stock then owned by the partnership. These shares were to be transferred to her and all payments were to be made by the partnership, so that when the shares matured she should collect the proceeds and thus receive payment of her loan. With respect to the other forty-five shares, the testimony was that these were actually taken out by her in her own name; that she gave Harry Marks the money each month for dues, interest and other charges; and that he paid the building and loan association by having a charge made against the partnership bank account purely as a matter of convenience.

It was testified that at the time of the adjudication in bankruptcy, there was still owing Hannah Marks on account of the above mentioned loan, the sum of $500. No mention was made of this transaction in the schedules filed in the United States district court.

Defendants further say that in 1925 Hannah Marks borrowed the sum of $1,010 on the shares for the purpose of buying a home. She says this was repaid at the rate of $30 a month, and that this amount was also handed to her husband and paid in the same manner that the monthly dues of $55 were paid.

The vice-chancellor resolved the questions of fact in favor of complainant and against defendants. He found that all the moneys paid on account of the shares were paid by the partnership and no money was paid by Hannah Marks, either in cash or by the loan above mentioned, and that the proceeds of the shares of stock were the property of the partnership and should be turned over to the trustee in bankruptcy for the benefit of the bankrupts' creditors.

In so finding we think the learned vice-chancellor was in error.

As to the assignment of the first ten shares by H. Marks & Son, there is nothing to indicate a lack of good faith in the transaction. The assignment was made in 1922. There is nothing to indicate that the firm was not solvent at that time and that the members thereof might not make a gift of the shares, if they chose, without fraud upon subsequent creditors. But the proofs are that the assignment was made to secure a loan, and these proofs are not adequately controverted. Fraud cannot be presumed; it must be proved. *Conway* v. *Raphel, 101 N. J. Eq. 495; affirmed, 102 N. J. Eq. 531.* Nor is there proof that the asignment of the ten shares of stock rendered the partnership insolvent. *Trust Company of Orange* v. *Garfinkel, 107 N. J. Eq. 20.*

The other shares were taken out in the name of Hannah Marks, and the uncontradicted testimony is that the dues were paid by her husband with moneys given to him by her. While no documentary proof of the payments by the wife to the husband was offered, there was no testimony to contradict the evidence in this regard and it is not shown to be inherently improbable and unbelievable. It cannot be said that there was any fraud established with respect to these shares of stock, or that the partnership ever had any interest in them. To sustain a decree there must be proof of fraud and not merely a suspicion. *Conway* v. *Raphel, supra.*

The decree of the court of chancery should be reversed.

*For affirmance*—PARKER, CASE, BODINE, VAN BUSKIRK, WELLS, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, DALY, DONGES, KAYS, HETFIELD, DEAR, KERNEY, JJ. 10.